```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :   USDC SDNY
  JYOTI SAINI,                                        :   DOCUMENT
                                                      :   ELECTRONICALLY FILED
                                                      :   DOC #: _____
                              Plaintiff,              :   DATE FILED: April 24, 2018
                                                      :
                      v.                              :   17 Civ. 1922 (KPF)
                                                      :
  CIGNA LIFE INSURANCE COMPANY OF                     :   OPINION AND ORDER
  NEW YORK,                                           :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

After her husband tragically and unexpectedly passed away, Plaintiff Jyoti Saini sought benefits under a group accident insurance policy issued to her husband by his former employer. The insurance provider, CIGNA Life Insurance Company of New York ("CIGNA"), denied Plaintiff's claim, and after exhausting her administrative remedies, she sued CIGNA. Plaintiff's complaint includes claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. 93-406, 88 Stat. 829; as well as Section 2601 of the New York Insurance Law and Section 349 of the New York General Business Law ("GBL"). Pending before the Court is CIGNA's motion to dismiss Plaintiff's state-law claims. For the following reasons, the Court grants the motion.

## BACKGROUND[1]

### A.  Factual Background

CIGNA's motion to dismiss turns largely on questions of law rather than allegations of fact.  The Court therefore recounts the underlying facts only as necessary for context.

#### 1.  Mr. Saini's Passing and the Subsequent Investigation

This case arises out of Plaintiff's claim for benefits under the group accident insurance policy of her late husband, Rakesh Saini ("Mr. Saini"), after his death in April 2015.  (*See* Am. Compl. ¶¶ 1, 6, 12).  On April 19, 2015, Mr. Saini was swimming with one of the Sainis' two children in a pool at the

---

[1]  This Opinion draws facts from the Amended Complaint ("Am. Compl." (Dkt. #11)), as well as the administrative record ("Administrative Record" or "Admin. R.") associated with CIGNA's processing of Plaintiff's claim, which CIGNA provided as an attachment to the Declaration of Kevin G. Horbatiuk in conjunction with the motion to dismiss (Dkt. #27-2, -3, -4).  The Court will refer to the Administrative Record by the Bates numbers that CIGNA affixed to its pages.  In addition, the Court will refer to CIGNA's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #28).

Plaintiff does not contest the Court's review of the Administrative Record in ruling on CIGNA's motion, and her Amended Complaint makes clear that she relied on the documentation included in the Administrative Record in drafting her claims.  (*See, e.g.*, Am. Compl. ¶ 20 (referring to CIGNA's expert statements in support of its final denial of Plaintiff's claim for benefits)).  The Court may therefore consider the Administrative Record because the Amended Complaint either incorporates its contents by reference, or relies on its terms and effects, thus rendering the documentation associated with CIGNA's denial of Plaintiff's claim integral to the Amended Complaint.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (citation omitted)); *see, e.g., Tagged, Inc.* v. *Scottsdale Ins. Co.*, No. 11 Civ. 127 (JFM), 2011 WL 2748682, at *1 n.1 (S.D.N.Y. May 27, 2011) (An "insurance policy falls within the classic category of documents that may be considered although not attached to the complaint" where "it is a contract that gives rise to legal obligations on which [plaintiff's] claims are based."); *PB Americas Inc.* v. *Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 253-54 (S.D.N.Y. 2010) (holding that insurance policy was integral to complaint where plaintiff alleged defendants breached the policy).

apartment complex in which the family lived; at that time, Plaintiff was in the apartment with their younger child. (*Id.* at ¶ 6). As Plaintiff was feeding the younger child, the older child returned to the apartment and told Plaintiff that Mr. Saini was nonresponsive. (*Id.* at ¶ 7). Upon arriving at the scene, Plaintiff found her husband dead, face down in the pool. (*See id.* at ¶ 9). A death certificate filed on April 21, 2015, cited the cause of death as "freshwater drowning" and the manner of death as an "accident." (Admin. R. 206).

An autopsy report by the Hennepin County Medical Examiner's Office also identified the cause of death as an accidental drowning. (Admin R. 54). The autopsy report diagnosed "[p]ulmonary congestion and edema … with foamy fluid in airways," and it noted further that a cardiovascular pathology report discovered "[a]ctive lymphocytic myocarditis of the cardiac conduction system[.]" (*Id.* at 55). The cardiovascular pathology report also diagnosed "[a]ctive lymphocytic myocarditis within atrioventricular node and penetrating His bundle." (*Id.* at 61). A toxicology report for Mr. Saini tested negative for any substances. (*Id.* at 55).

### 2. CIGNA's Review and Denial of Plaintiff's Claim for Benefits

On May 5, 2015, Plaintiff submitted a claim to CIGNA for benefits under Mr. Saini's group accident policy, which CIGNA had issued to his employer, Tata Consulting Services Limited. (*See* Admin R. 1, 13, 35). In the process of investigating the claim, CIGNA solicited the opinion of Dr. R. Norton Hall as to whether "Mr. Saini suffered a medical event prior to his drowning[.]" (*Id.* at 103). After reviewing the available medical evidence, Dr. Hall explained that

3

the autopsy report revealed "acute myocarditis, an inflammatory condition of the heart with lymphocytic invasion of the conduction system of the heart at the atrioventricular node and Bundle of His[.]" (*Id.* at 104). This condition "interrupt[s] the nerve impulses that trigger the ventricles to contract and the heart to beat, thus causing a sudden electrical cardiac death." (*Id.*). Dr. Hall thus concluded that "Mr. Saini suffered an acute medical event that resulted in a sudden cardiac death prior to being found face down in the water." (*Id.*).[2]

On August 6, 2015, CIGNA issued its determination on Plaintiff's claim for benefits, in which it explained that she was not entitled to benefits under Mr. Saini's insurance policy. (*See* Admin. R. 35). The decision relied on an exclusion from coverage in the policy providing as follows:

> [B]enefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:
>
> … Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

(*Id.*). In addition, the policy defined a "Covered Accident as 'a sudden, unforeseeable, external event that … is not contributed to by disease, Sickness, mental or bodily infirmity." (*Id.* at 37 (ellipsis in original)). Thus, relying on the

---

[2] Dr. Hall also explained that the medical examiner who signed Mr. Saini's death certificate did so before Mr. Saini's heart had been examined, and therefore the medical examiner "did not have the benefit of the investigation and findings" of the cardiovascular pathology report. (Admin. R. 104).

4

discovery of Mr. Saini's heart condition, CIGNA determined that his "drowning and death were precipitated by an internal, medical event" that "does not meet the definition of a Covered Accident as defined by [the] policy," and "because his drowning was caused by a sudden cardiac event, his death is specifically excluded by the terms of [the] policy[.]" (*Id.*).

On October 26, 2015, Plaintiff appealed CIGNA's initial determination. (Admin. R. 31). In processing the appeal, CIGNA solicited a review of the case by Dr. J. Scott Denton, a forensic pathologist. (*See id.* at 21; Def. Br. 7). Dr. Denton opined "that the most likely cause of death for Mr. Saini is best certified as drowning due to lymphocytic myocarditis of the cardiac conduction system." (Admin. R. 21). Based on this opinion, on February 2, 2016, CIGNA issued its final decision denying Plaintiff benefits. (*Id.* at 13).

## B. Procedural Background

Plaintiff filed the initial complaint in this action on March 16, 2017 (Dkt. #2), and she amended her complaint on April 13, 2017 (Dkt. #11). The Amended Complaint includes the following causes of action:

i. Declaratory relief "pursuant to [Section] 501(a)(1)(B) of the ERISA[,] 29 U.S.C.[] § 1132(a)(1)(B)," in the form of an order "declaring that the action of [CIGNA] in denying [P]laintiff's ... claim is illegal and contrary to law and that [P]laintiff is entitled to recover her lawful benefits under the Plan, along with attorney fees, costs and expenses and pre[-] and post-judgment interest."

ii. "Recovery of benefits under the Plan" pursuant to [Section] 501(a)(1)(B) of the ERISA[,] 29 U.S.C.[] § 1132(a)(1)(B)," in the form of an order "directing [CIGNA] to pay the benefits that are due to [P]laintiff under the Plan, that are available to [P]laintiff[.]"

5

    iii.    "'Other equitable relief,' pursuant to [Section] 501(a)(3) of ERISA[,] 29 U.S.C.[] § 1132(a)(3) for all her other damages, including compensatory damages[.]"[3]

    iv.    Damages under New York law for "'bad faith and unfair claims settlement practice and procedures and unfair trade practices' in violation of [Section] 2601 of the New York State Insurance Law and for 'deceptive business practices,' in violation of [Section] 349 of the [GBL.]"

(Am. Compl. ¶¶ 23-34 (capitalization removed)).

On October 26, 2017, CIGNA moved to dismiss the Plaintiff's state-law claims. (Dkt. #26-28). On November 27, 2017, Plaintiff opposed the motion (Dkt. #30), and on December 11, 2017, CIGNA replied to Plaintiff's opposition (Dkt. #31).

## DISCUSSION

**A.    Motions to Dismiss**

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a

---

[3]    The first, second, and third causes of action refer to Section 501(a)(3) of ERISA and 29 U.S.C. § 1132, the latter of which is not a codification of Section 501. Although these claims are not at issue here, the Court notes that if Plaintiff sources these claims in Section 501 of ERISA, that citation is likely erroneous. Section 501 of ERISA, codified at 29 U.S.C. § 1131, specifies "criminal penalties" for willful ERISA violations, and it does not include subsections. Instead, the Court intuits that Plaintiff intended to refer to Section 502 of ERISA, codified at 29 U.S.C. § 1132, which constitutes the statute's civil enforcement scheme.

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     The Court Dismisses Plaintiff's State-Law Claims**

    **1.     New York Insurance Law § 2601 Does Not Create a Private Right of Action**

Section 2601 of the New York Insurance Law prohibits all insurers engaged in business in New York from "engag[ing] in unfair claim settlement practices." N.Y. Ins. Law § 2601(a). This Section is enforceable through § 109, which authorizes the New York Superintendent of Financial Services to bring a civil action to recover a money judgment as a penalty for any violation of the

7

New York Insurance Law. *Id.* § 109(d); *see also id.* § 107(41) (defining "Superintendent" as the Superintendent of Financial Services of New York).

The Court will not belabor why Plaintiff's claim under § 2601 fails — despite Plaintiff's contestations to the contrary, New York courts have made clear that § 2601 does not create a private right of action. *See N.Y. Univ.* v. *Cont'l Ins. Co.*, 87 N.Y.2d 308, 317-18 (1995) ("We recognized … in *Rocanova* … that Insurance Law § 2601 does not give rise to a private cause of action." (citing *Rocanova* v. *Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 614-15 (1994) ("[T]he law of this State does not currently recognize a private cause of action under Insurance Law § 2601." (collecting cases))); *accord Lobello* v. *N.Y. Cent. Mut. Fire Ins. Co.*, 58 N.Y.S.3d 842, 844 (4th Dep't 2017), *appeal withdrawn*, 30 N.Y.3d 1103 (2018); *Litvinov* v. *Hodson*, 826 N.Y.S.2d 536, 536-37 (4th Dep't 2006); *Zawahir* v. *Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 407 (2d Dep't 2005). Plaintiff's claim under New York Insurance law § 2601 is therefore dismissed.

    **2.**    **ERISA Preempts Plaintiff's GBL § 349 Claim**

"By its terms, ERISA governs employee benefit plans established or maintained by an employer or an employee organization." *Wiener* v. *Unumprovident Corp.*, 202 F. Supp. 2d 116, 119 (S.D.N.Y. 2002) (citing 29 U.S.C. § 1002(1)-(6)). And by design, ERISA "expressly include[s] a broadly worded preemption clause within a comprehensive statutory scheme" to "establish pension plan regulation as exclusively a federal concern." *Smith* v. *Dunham-Bush, Inc.*, 959 F.2d 6, 8 (2d Cir. 1992) (internal citations omitted).

Specifically, the statutory scheme provides that it "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" that is "not exempt" from preemption. 29 U.S.C. § 1144(a); *see Franklin H. Williams Ins. Tr.* v. *Travelers Ins. Co.*, 50 F.3d 144, 147-48 (2d Cir. 1995). ERISA "exempts from preemption generally applicable criminal laws and laws regulating insurance, banking[,] or securities." *Smith*, 959 F.2d at 9 n.2 (citing 29 U.S.C. §§ 1144(b)(2)(A), (b)(4)).

This civil enforcement scheme under ERISA thus "completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Montefiore Med. Ctr.* v. *Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (quoting *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 209 (2004)). Indeed, a state-law claim that "merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Venturino* v. *First Unum Life Ins. Co.*, 724 F. Supp. 2d 429, 432 (S.D.N.Y. 2010) (quoting *Diduck* v. *Kaszycki & Sons Contractors Inc.*, 974 F.2d 270, 288 (2d Cir. 1992)). Whether a state-law claim is preempted thus turns on whether it is "within the scope of [ERISA] § 502(a)(1)(B)," 29 U.S.C. § 1132(a)(1)(B), which allows "a plan participant or beneficiary" to "bring an action 'to recover benefits due to him [or her] under the terms of [the] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan[.]" *Montefiore Med. Ctr.*, 642 F.3d at 328 (last alteration in original).

9

To determine whether a claim falls within the scope of § 502(a)(1)(B), courts within the Second Circuit apply a two-pronged inquiry: Such a claim is preempted if it is "brought (i) by 'an individual [who] at some point in time, could have brought his [or her] claim under ERISA § 502(a)(1)(B),' and (ii) under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.'" *Montefiore Med. Ctr.*, 642 F.3d at 328 (first alteration in original) (footnote call number omitted) (quoting *Davila*, 542 U.S. at 210). The first prong entails a two-part inquiry, under which a court considers (i) "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)," and (ii) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.*

Within this framework, ERISA preempts Plaintiff's § 349 claim. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the state of New York. § 349(a). To state a claim under § 349, "a plaintiff must show: [i] the defendant directed deceptive acts at consumers; [ii] the defendant's acts mislead in a material way; and [iii] an injury, as a result of the defendant's acts." *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227 (SHS) (KNF), 2010 WL 685009, at *7 (S.D.N.Y. Feb. 23, 2010). Plaintiff's § 349 claim offers no explanation as to why CIGNA's denial of her claim for benefits was deceptive or misleading, and instead alleges in conclusory fashion that she is entitled to damages because of CIGNA's "deceptive business practices." For this reason, Plaintiff fails to state

10

a *prima facie* § 349 claim. *See also Abraham* v. *Penn Mut. Life Ins. Co.*, No. 98 Civ. 6439 (DC), 2000 WL 1051848, at *3 (S.D.N.Y. July 31, 2000) (finding that a "'private' contract dispute as to policy coverage" does not constitute a deceptive act or practice that is "consumer-oriented" under section 349" (alteration in original) (quoting *N.Y. Univ.*, 87 N.Y.2d at 321)). But even if she stated a valid claim, it would be preempted.

*First*, as a beneficiary to the Plan, Plaintiff is the type of person who could have brought her claim pursuant to § 502(a)(1)(B). *See, e.g., Dillon* v. *Metro. Life Ins. Co.*, 832 F. Supp. 2d 355, 362 (S.D.N.Y. 2011) ("Although [plaintiff] brings his claim as a garden variety breach of contract claim, he could have brought it as a claim for benefits under ERISA because it is grounded in the denial of benefits pursuant to the terms of his Plan."). Indeed, Plaintiff's complaint seemingly intends to state such a claim. *See supra* note 3.

*Second*, the Court may construe Plaintiff's claim as a "colorable claim" for benefits. Though the pleadings are not a model of clarity, and though the claim under § 349 is framed as one based on "deceptive business practices" (*see* Am. Compl. ¶¶ 32-33), the Amended Complaint seeks review of CIGNA's denial of Plaintiff's claim for benefits, and Plaintiff would only be entitled to damages if the Court found that CIGNA had improperly denied her claim. *See Neuroaxis Neurosurgical Assocs., PC* v. *Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517 (BSJ) (AJP), 2012 WL 4840807, at *3-4 (S.D.N.Y. Oct. 4, 2012) (differentiating between claims for the "right to payment" and "amount of payment," only the former of which "are considered actual claims for benefits

and can be preempted" (citing *Montefiore*, 642 F.3d at 330-32)); *accord McCulloch Orthopedic Surgical Servs., PLLC* v. *United Healthcare Ins. Co. of N.Y.*, No. 14 Civ. 6989 (JPO), 2015 WL 3604249, at *5 (S.D.N.Y. June 8, 2015).

*Third* and finally, Plaintiff does not indicate that CIGNA was subject to any legal duty independent of those embodied in the insurance policy at issue, either in her pleadings or her opposition to the motion to dismiss. *See, e.g., Iannone* v. *Metro. Life Ins. Co.*, No. 14 Civ. 0341 (AKH), 2014 WL 1918238, at *5 (S.D.N.Y. May 12, 2014) (holding that ERISA preempted fraudulent misrepresentation claim where plaintiff did "not identif[y] any independent legal duty which require[d] [insurer] to continue to provide her with … benefits"). Plaintiff's ultimate success in this lawsuit depends on whether CIGNA properly denied her claim for benefits; although she cites to non-ERISA, New York statutes, her pleadings do not suggest any alternative theory of recovery, such as fraud or misrepresentations on CIGNA's part. *See, e.g., Dillon*, 832 F. Supp. 2d at 362 (finding no independent legal duty where contract claim "derive[d] entirely from [insurer's] obligations pursuant to" insurance plan, and "[a]ny evaluation of the claim is 'inextricably intertwined with the interpretation of Plan coverage and benefits" (quoting *Montefiore*, 642 F.3d at 332)).

Thus, ERISA preempts Plaintiff's claim under GBL § 349, and it is therefore dismissed.[4]

---

4    Although the Court need not reach whether Plaintiff's claim under the New York Insurance Law is preempted, the Court notes that "[n]umerous courts [that] have reviewed causes of action … brought pursuant to state insurance law to collect unpaid benefits … ha[ve] concluded — notwithstanding [ERISA's] insurance saving clause —

12

## CONCLUSION

Given the foregoing, CIGNA's motion is GRANTED, and Plaintiff's claims under the New York Insurance Law § 2601 and the New York General Business Law § 349 are DISMISSED WITH PREJUDICE.  The parties are directed to submit a proposed case management plan by May 31, 2018.  The Clerk of Court is directed to terminate the motion at docket entry 26.

SO ORDERED.

Dated: April 24, 2018
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

that the causes of action are preempted by ERISA." *Shackelton* v. *Conn. Gen. Life Ins. Co.*, 817 F. Supp. 277, 283 (N.D.N.Y. 1993) (collecting cases).